IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                      No. 18-CR-2980 MV

BRANQUILENO CHIEF,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant Branquileno Chief's Motion to Compel Polygraph Data. Doc. 61. The government responded. Doc. 69. Mr. Chief did not reply. Having considered the motion, the relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken in part and will be **GRANTED** in part.

**BACKGROUND**

Mr. Chief is charged in a one-count indictment with Assault of a Minor Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 3559(f)(3). Doc. 2. The charge stems from his alleged assault of his four-month-old daughter, S.C., in Indian Country on May 6, 2017. *See* Doc. 69 at 1. Mr. Chief was first interviewed by law enforcement 12 days after the alleged incident and denied any wrongdoing. *See* Doc. 34 at 2–3. He was next interviewed almost a year later, on March 9, 2018, and again denied assaulting S.C. *Id*. at 3. Then, on July 11, 2018, Mr. Chief agreed to submit to a polygraph examination conducted by Federal Bureau of Investigation (FBI) Special Agent (SA) Marcus McCaskill at the Ramah-Navajo prosecutor's office in Gallup, New Mexico. *Id.* SA McCaskill asked Mr. Chief two questions during the examination: (1) "Did you hit [S.C.]?" and (2) "Do you know for sure who hit [S.C.]?" *See id*.

Ex. 9 at 1 ("Polygraph Report"). Mr. Chief responded "no" to both questions, but SA McCaskill found the responses to indicate deception. *See id.*

SA McCaskill then conducted a recorded post-test interview during which he confronted Mr. Chief with his apparently deceptive responses. *See* Doc. 69 at 2. Mr. Chief initially continued to deny wrongdoing but eventually admitted that he had gotten angry with S.C. on the day in question and "shoved a toy into her mouth." Polygraph Report at 2. At SA McCaskill's suggestion, Mr. Chief then wrote a signed statement about the incident, which reads:

> Hi I'm Branquileno Chief I was in the room with [S.C.] while [my girlfriend] was cooking then [S.C.] was on the bed she started to fus [sic] then it got to me while I was lighting the sent [sic] then she got more fussy then I grab a toy and shuvd [sic] to into her mouth.

Polygraph Report at 3. Upon reading the statement, SA McCaskill asked Mr. Chief if he wanted to add an apology for lying to the FBI investigators, which Mr. Chief subsequently added. *See id.* at 2. The investigators then continued to question Mr. Chief about other injuries that S.C. had apparently suffered prior to the incident on May 6, 2017. *See id.* at 3. In response, Mr. Chief eventually stated that he had "squeezed [S.C.] very hard on another occasion when he was angry." *Id.* He then prepared and signed another written statement to that effect, again at SA McCaskill's suggestion. *See id.*

On May 31, 2019, Mr. Chief filed a motion to suppress his statements during the post-test interview. *See* Doc. 25. He asserts several grounds for suppression in the motion, including that the "manner in which the agents interrogated [him]" and his "mental condition at the time of the interrogation" rendered his statements involuntary. *See id.* at 2. In support, Mr. Chief points to his "very limited intellectual capacities," his "naivete," and the fact that he is "almost illiterate." *See id.* at 11. In response, the government asserts that the confessed statements were voluntary. *See* Doc. 34 at 11–13.

2

Mr. Chief then filed the instant motion to compel on February 7, 2020 while awaiting a hearing on his motion to suppress. *See* Doc. 61. He represents that in November 2018 and January 2019, the government provided him with several documents in discovery related to the polygraph examination, including an audio recording of the post-test interview and a transcript of the examination itself. *See id*. at 3. The government also provided Mr. Chief with the polygraph examination report prepared by SA McCaskill. *See* Doc. 69 at 6. Mr. Chief further represents, however, that on February 4, 2020, the Assistant United States Attorney (AUSA) assigned to this case informed defense counsel that there are documents related to the polygraph examination that have not been disclosed in discovery due to the FBI's position that they are proprietary. *See* Doc. 61 at 4. He now moves the Court to order the disclosure of those documents, including: (1) all electronic data as recorded by SA McCaskill and/or any other agents of the government during Mr. Chief's polygraph examination; and (2) all polygraph examination worksheets; notes; and "any other documents pertinent to FBI procedures, usages, and wonts related to polygraph examinations." *See id*. at 1. Mr. Chief argues that he is entitled to the requested documents under Rule 16 of the Federal Rules of Criminal Procedure because "[a]llowing a defense expert to review whether the results of the polygraph actually support a failed test is material to evaluating the voluntariness of [his] purported confession." *See id*. at 8–9. Mr. Chief has retained an expert polygrapher to review the documents if disclosed and testify at the upcoming suppression hearing. *See* Doc. 69 at 3.

The government makes several arguments in response. *See id*. First, it argues that there is no indication that SA McCaskill used the polygraph examination as a "ruse" to coerce Mr. Chief into confessing, and that Mr. Chief "has everything needed to review how SA McCaskill conducted his interview." *Id*. at 5–6. Next, the government argues that the requested information

is not "material" within the meaning of Rule 16 because the polygraph results cannot be admitted as evidence at trial and are therefore not part of the government's case-in-chief. *See id*. at 6. Last, the government argues that Mr. Chief's claim that the polygraph data *may* be exculpatory is too speculative and does not establish materiality absent a "factual basis strongly indicating [his] expert would read the tests and data differently." *Id*. at 7 (citing *United States v. King*, 928 F. Supp. 1059, 1063 (D. Kan. 1996)).

The government additionally requests that if the Court were to order a review of the undisclosed discovery, the review take place at the FBI's office in Albuquerque and "be subject to a protective order that would seek to prevent any accidental disclosure of protected testing protocols and procedures." Doc. 69 at 7. Mr. Chief does not object to the Court placing the requested materials under a protective order but argues that requiring the review to take place at the FBI office would be "unduly burdensome, expensive, and inefficient" because his experts do not reside in New Mexico. *See* Doc. 61 at 10.

## STANDARD

There is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The government, however, must make the disclosures required by *Brady v. Maryland*, 373 U.S. 83 (1963), and by the Federal Rules of Criminal Procedure.

Rule 16 of the Federal Rules of Criminal Procedure provides in pertinent part that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" documents "within the government's possession, custody, or control" if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Items

that fall under the purview of Rule 16 include "books, papers, documents, data, photographs, tangible objections, buildings or places." *Id.* Rule 16 also extends to "the results or reports of any physical or mental examination and of any scientific test or experiment." *Id.* at (a)(1)(F).

A defendant is presumptively *not* entitled, however, to "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" or material covered by the Jencks Act. Fed. R. Crim. P. 16(a)(2). *See also* 18 U.S.C. § 3500. An agent's notes may nevertheless be discoverable under *Brady* if they are exculpatory and material as well as under the Jencks Act if they constitute the "statements" of testifying witnesses. *United States v. Lujan*, 530 F. Supp. 2d 1224, 1265 (D.N.M. 2008) (citations omitted).

The Supreme Court has explained that, in the context of Rule 16, evidence "material to preparing the defense" refers specifically to evidence that responds "to the Government's case in chief" rather than simply any evidence that might ultimately prevent a conviction. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). *See also Lujan*, 530 F. Supp. 2d at 1234 ("The term 'defense' means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged."). Given this definition of materiality, nothing in Rule 16 or *Armstrong* conflicts with the government's obligation under *Brady* and its progeny. *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) ("Under *Brady,* the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."). For purposes of Rule 16(a)(1)(E)(i), materiality "means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *See United States v. Burger*, 773 F. Supp. 1419, 1424 (D. Kan. 1991) (citation omitted). Rather, "there must be some indication that the pretrial

disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* (citation omitted); *see also United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993).

Where a defendant requests undisclosed evidence from the government, a "defendant must make a prima facie showing of materiality." *Lujan*, 530 F. Supp. 2d at 1234. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). While this burden is not a heavy one, "the defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *United States v. Jordan,* 316 F.3d 1215, 1250 (11th Cir. 2003) (internal quotation marks omitted).

Rule 16 only requires production of information within the government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). *Brady* only requires the disclosure of information that can be said to be within the government's possession or knowledge, either actual or constructive. *Lujan*, 530 F.Supp.2d at 1231 (citing *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999)). While the government may not circumvent *Brady* requirements by remaining ignorant of the information available, it does not have "an affirmative duty under *Brady* to seek out information that is not in its or its agents' possession." *Id.* (citing *United States v. Graham*, 484 F.3d 413, 415–18 (6th Cir. 2007)).

## DISCUSSION

For the reasons stated below, the Court finds that Mr. Chief has established his entitlement under Rule 16 to any and all undisclosed polygraph worksheets as well as the raw data from his July 2018 polygraph examination. The Court finds that he is not, however, entitled to SA

McCaskill's rough notes due to the exemption for government work product in Rule 16(a)(2) unless the government finds that they are otherwise discoverable under *Brady* or Rule 16(a)(1)(A)–(D), (F), and (G), *see* Fed. R. Crim. P. 16(a)(2), or to the extent that they contain "statements" within the meaning of the Jencks Act and may therefore be subject to disclosure upon a motion by Mr. Chief after SA McCaskill testifies. *See* 18 U.S.C. §3500(b).

> I. **Polygraph Worksheets and Raw Data**

First, although the government does not intend to introduce the results of the July 11, 2018 polygraph examination as evidence against Mr. Chief at trial, the Court finds that Mr. Chief is entitled to the polygraph worksheets and data so long as the government intends to introduce the incriminating statements he made immediately after the examination. The worksheets and data are clearly within the scope of Rule 16 because the government's discovery obligations under the Rule extend to "papers, documents, [and] data" in its possession, custody, or control, as well as "the results… of any physical or mental examination." *See* Fed. R. Crim. P. 16(a)(1)(E), (F). At least two recent cases in the District of New Mexico have come to the same conclusion. *See United States v. Tennison*, 15-CR-00212-MCA, ECF Doc. 42 (D.N.M. Jun. 5, 2015) (unreported) (ordering the disclosure of polygraph data); *United States v. Coriz*, 17-CV-1105 JCH, 2017 WL 4351754 at *1–2 (D.N.M. Sep. 28, 2017) (unreported) (ordering same after government agreed that polygraph data is discoverable and should be disclosed).

The Court further finds that the polygraph worksheets and data are "material" within the meaning of Rule 16 because they shed light on the voluntariness of the oral and written confessions Mr. Chief made to the FBI, confessions which the government, judging by its opposition to Mr. Chief's motion to suppress, intends to use in its case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(E). Courts reviewing the voluntariness of a defendant's confession must consider "the totality of all

the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." *United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). While courts have held that misrepresentations and trickery do not by themselves render a voluntary confession involuntary, *United States v. Blue*, 122 Fed. Appx. 427, 430 (10th Cir. 2005), the "state of the accused's mind" and the "psychological impact" of interrogation techniques are relevant factors to be taken into consideration. *Schneckloth*, 412 U.S. at 226–27. Moreover, Mr. Chief need not show that the requested materials will prove that his confession was involuntary in order to establish his entitlement to them under Rule 16; he need only make a prima facie showing that the items would be "helpful to the defense." *Mandel*, 914 F.2d at 1219.

Mr. Chief has met that burden. He has explained that the polygraph worksheets and data will enable him, through his retained expert, to investigate the validity of the FBI's polygraph analysis in order to determine whether SA McCaskill may have misrepresented the results as a way to induce his confession. *See* Doc. 61 at 8–9. If Mr. Chief's expert were to make such a finding, it would bear directly on the question pending before the Court of whether his confessed statements were voluntary under the totality of the circumstances and therefore admissible or whether they were coerced and therefore inadmissible at trial under the Due Process Clause. *See McCullah*, 76 F.3d at 1101. Whether SA McCaskill misrepresented the polygraph results while questioning Mr. Chief is also material because it goes to the weight the jury should assign Mr. Chief's confessions in the event that the confessions are admitted. *See* Tenth Circuit Pattern Criminal Jury Instructions § 1.25 ("Voluntariness of Statement By Defendant") (2018) (instructing jurors considering whether a confessed statement is reliable and credible to consider "factors bearing on the voluntariness of the statement" including "any evidence concerning [the

defendant's] treatment while interrogated.").

Nor does *United States v. King*, the Kansas case cited by the government, compel a different result. *See* Doc. 69 at 7 (citing *King*, 928 F. Supp. at 1063). Unlike here, the polygraph information requested in *King* did not relate to an examination undertaken by the defendant just prior to his confession; rather, the polygraph tests in that case were given to other suspects in the investigation, all of whom passed. *Id.* at 1061. Because the government did not intend to introduce evidence of the other suspects' results in its case-in-chief against the defendant, the Court found that the defendant had not established the materiality of the requested documents. *See id.* at 1063. The link in this case between the polygraph documents and the government's case-in-chief is much more direct because the examination here was performed on the defendant immediately before the confessions that the government will likely use as its primary evidence against him at trial. The Court therefore finds *King* distinguishable.

Finally, the Court notes that even if the government does not intend to introduce Mr. Chief's incriminating statements against him in its case-in-chief, *Brady* would still require that the worksheets and data be disclosed to the defense if they are susceptible to a competing interpretation that Mr. Chief's denials of wrongdoing were honest rather than deceptive, because such evidence would suggest his innocence of the crimes charged. The Court accordingly admonishes the government to review the worksheets and data and disclose them to the defense if they are open to a different interpretation that exonerates, rather than incriminates, Mr. Chief.

## II.     SA McCaskill's Rough Notes

Unlike the polygraph worksheets and data, the Court finds that Mr. Chief not entitled to SA McCaskill's rough notes under Rule 16 because they are exempted from the Rule as the work product of a government agent. *See* Fed. R. Crim. P. 16(a)(2). The Court additionally finds that

he has not demonstrated that the notes must be turned over under *Brady* or another source of authority. To require disclosure under *Brady*, a defendant must establish: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the defense. *See Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007). Evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009). A defendant's claim that information *might* be material does not suffice. *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994) (citations omitted).

The Court nevertheless reminds the government of its ongoing constitutional obligation under *Brady* to disclose exculpatory evidence to the defense. To the extent that SA McCaskill's rough notes contain undisclosed information that may be favorable and material, the government should resolve all doubts in favor of disclosure. *United States v. Diggs*, 801 F. Supp. 441, 447 (D. Kan. 1992). Such information could include any notes about Mr. Chief's limited intellectual capacity, difficulty understanding the polygraph examination, or any other factors bearing on the voluntariness of his confessions to the FBI. To the extent that SA McCaskill's notes contain "statements" within the meaning of the Jencks Act, they may also be subject to disclosure upon a motion by Mr. Chief after SA McCaskill testifies. *See* 18 U.S.C. § 3500(b).

## CONCLUSION

For the reasons stated above, Mr. Chief's Motion to Compel Polygraph Data [Doc. 61] is hereby **GRANTED** in part. If the government intends to introduce the self-incriminating statements Mr. Chief made to the FBI on July 11, 2018 in its case-in-chief, it is **HEREBY ORDERED** to disclose the following to the defense as soon as possible and **no later than 5:00 p.m. on Monday, May 18, 2020**:

1. Copies of any and all polygraph worksheets prepared by SA McCaskill or any other member of law enforcement pertaining to the July 11, 2018 polygraph examination of Mr. Chief; and

2. Copies of any and all electronic polygraph data in native format produced during or related to the July 11, 2018 polygraph examination of Mr. Chief.

The Court further orders that even if the government does not intend to introduce Mr. Chief's statements in its case-in-chief, it shall review the polygraph worksheets and data and disclose them to the defense under *Brady* if they are susceptible to a competing expert interpretation that would find Mr. Chief's responses to be honest rather than deceptive.

In order to avoid imposing unnecessary costs and burdens on the defense, the Court will not require that its review of the disclosed materials take place at the FBI's Albuquerque field office. However, to prevent against the accidental or inappropriate use or disclosure of the disclosed information, the Court **HEREBY IMPOSES** the following protective conditions:

1. The defense is prohibited from disseminating the disclosed materials, their contents, or copies thereof to anyone other than members of the defense team. For the purposes of this Order, the defense team includes Mr. Chief, defense counsel, any defense paralegals and investigators, any defense experts, and any other persons directly employed for the purpose of aiding in Mr. Chief's defense in this case. Any member of the defense team to whom the disclosed materials are disseminated is subject to the conditions of this Order.

2. The defense is prohibited from using the materials received in response to this Order for any purposes other than preparing for and executing the defense of Mr. Chief in this case.

3. The defense team must take any and all reasonable measures to ensure that the disclosed information is not disseminated or inadvertently disclosed to any unauthorized person.

4. Any and all copies of the disclosed materials disseminated to members of the defense team must be collected by defense counsel after the completion of their use and returned to the government.

5. Counsel is barred from setting forth any of the disclosed materials or their contents in any pleadings or motions accessible to the general public without first obtaining the express permission of the Court to do so.

ENTERED this 8th day of May, 2020.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE